## CONOVER *a*. HOFFMAN.

*Court of Appeals; June Term*, 1858.

WILL.—CODICIL.—REVOCATION.—POWER OF SALE.—EQUITABLE CONVERSION.

A codicil is not a revocation of a will further than in respect to provisions in the will inconsistent with those of the codicil.

A codicil providing a different disposition of the testator's estate, from that provided by the will, does not operate to revoke a power of sale given to the executors by the will.

Appeal from a judgment.

This action was brought by Gustavus A. and John T. Conover against Ann Cornelia Hoffman, to compel the specific per-

formance of a contract to purchase a lot in the city of New York. The defendant admitted the contract, but alleged that the plaintiffs could not convey a good title. The title to the premises was derived under the will of James R. Smith, who died in 1817. In January, 1817, Smith made his will, appointing executors with full power of sale. In May, 1817, the testator added a codicil to his will, which is sufficiently stated in the opinion. The objection to the title was that this codicil had revoked the power of sale as to this property, and created a trust in it for the benefit of the children of the testator and their descendants. The testator left a widow, a son, and three daughters; the estate was in debt, and consisted mainly of unproductive real estate. In December, 1829, the surviving executors sold the property in controversy, with other property, to one Dyson, through whom the plaintiffs derived title; the heirs all joined in the conveyance, and were all upwards of twenty-one, and the son upwards of twenty-five, at the time. There was complete and perfect chain of title to the plaintiffs under this conveyance, and it was shown that there were no incumbrances. The plaintiffs had judgment, and appeal was finally taken to this court.

*William Curtis Noyes,* for the appellant.—I. The will did not positively direct a sale by the executors, but left it to discretion, and therefore there was no conversion of the property from real to personal, within the rules in regard to equitable conversion. (Arnold *a.* Gilbert, 5 *Barb.,* 190.)

II. By the last clause of the will, the testator, in addition to the power resting in him, as proprietor, to dispose of his property as he saw fit, expressly reserved the right, and indicated his intention to dispose of it by a codicil or codicils to be subsequently made; and, in case he did not, then it was to be distributed according to law.

III. That intention he carried into effect by the codicil, in which he created a trust in his executors, for the benefit of his four children, in the real estate of which the premises in question formed a part, with remainders in certain portions of it to the child or children of his three daughters.

IV. This codicil was a revocation of the discretionary power of sale conferred by the will. 1. It created a trust, which the

will did not, and in such a way as to indicate an intention to have the property remain in the same fixed and safe condition in which it was at that time, that is, as real estate. 2. The codicil only "ratifies and confirms" the will in so far as it was not revoked or altered by the codicil; and the power to lease, contained in the same clause of the will, shows that the testator did not intend or contemplate a sale, but a lease of all his real estate. 3. In regard to all the real estate which the testator intended to have his executors dispose of, he has given positive directions that they should do so by the terms of the codicil, and this shows that he did not intend that the discretionary power to sell, given by the will, should continue to operate upon any property specifically covered by the codicil. 4. It is a general principle that a trust arising out of landed property, unless otherwise expressly created by the plain terms of the will, attaches to the land itself, and not to its proceeds; and there can be no presumption that a conversion was intended, unless the will clearly declares it. 5. To hold that the executors might sell the land in the manner attempted in this case, and by uniting the children as grantors, would be sanctioning a practical fraud upon the trust and upon the ultimate beneficiaries; for the object of all parties seems to have been to get rid of the limitations of the codicil, and to convert the property into money for the purpose of more rapid manipulation. The intention of the testator was to provide for his grandchildren, and allowing this sale to stand would tend to defeat that intention.

V. The fact that charges existed on the land, even though they were created by the will, did not authorize the sale by the executors.

*Edwards Pierrepont*, for the respondent.—I. "The intent of the testator is to be gathered from the whole, and a codicil is no revocation of a will, further than such revocation is particularly expressed." (Westcott *a.* Cady, 5 *Johns. Ch.*, 334; Willet *a.* Sandford, 1 *Ves.*, 186; Hone *a.* Van Schaick, 3 *Barb. Ch.*, 488.) The powers of sale, given by the will, are as ample and absolute as possible. The codicil was made in the following spring, adding to the powers already conferred yet other powers, and without a suggestion of any desire to revoke the

power of sale. (*Williams on Exec.*, 8.) It is a sound rule that the dispositions of a will are not to be disturbed by a codicil, further than is absolutely necessary to give it effect. (Kane *a.* Astor, 5 *Sandf.*, 467.)

II. The intention of the testator is to be ascertained from the whole will taken together. (Bradhurst *a.* Bradhurst, 1 *Paige*, 331; Covenhoven *a.* Shuler, 2 *Ib.*, 122; Rathbone *a.* Dyckman, 3 *Ib.*, 9; Crosby *a.* Wendell, 6 *Ib.*, 548.) Where the words of a will, says the chancellor, in the case of Covenhoven *a.* Shuler (2 *Paige*, 122), are capable of a twofold construction, that should be adopted most consistent with the intention, as ascertained by the other provisions of the will.

III. Full powers of sale were given to the executors, which they have properly exercised. Where it is necessary to carry into effect the intentions of the testator, under a power in trust to convert real estate into personal estate, to produce justice between the different objects of the testator's bounty, equity considers the conversion as having been made at the death of the testator. (Van Vechten *a.* Van Vechten, 8 *Paige*, 104; Bogert *a.* Hertell, 4 *Hill*, 492; Gott *a.* Cook, 7 *Paige*, 521; Bunce *a.* Vandergrift, 8 *Ib.*, 37; Lorillard *a.* Coster, 5 *Ib.*, 172; Hawley *a.* James, *Ib.*, 318; Haxtun *a.* Corse, 2 *Barb. Ch.*, 506; Smith *a.* Kearney, *Ib.*, 533; Arnold *a.* Gilbert, 5 *Barb.*, 190; Vail *a.* Vail, 7 *Ib.*, 226; Burrill *a.* Sheil, 2 *Ib.*, 457; Bradhurst *a.* Bradhurst, 1 *Paige*, 331; 2 *Story's Eq. Juris.*, § 1131, and *notes;* Kane *a.* Gott, 24 *Wend.*, 641.) The estate was chiefly real, consisting principally of vacant lots and unimproved lands; it was largely in debt, and the testator gives annuities and legacies requiring from thirty to forty thousand dollars. These debts and bequests were a charge upon the real estate (Bench *a.* Byles, 4 *Mad.*, 187), to pay which it would be necessary to make sales, and from the necessity would naturally be inferred the gift of the power.

IV. Where the executors are empowered to sell, and to make equal distribution, there is an equitable conversion of the land, and it is to be considered as personal property. (Martin *a.* Sherman, 2 *Sandf. Ch.*, 341; March *a.* Wheeler, 2 *Edw.*, 156; Drake *a.* Pell, 3 *Ib.*, 251.)

V. Where a subsequent clause in a will is apparently repugnant to the intention of the testator, as derived from the whole

will, it may be rejected. (Bradley *a.* Amidon, 10 *Paige,* 235.) The general intent distinctly manifested is to be carried out at the expense of any imagined special intent. (4 *Kent's Com.,* 597, and *notes;* Bradley *a.* Amidon, 10 *Paige,* 235 ; Covenhoven *a.* Shuler, 2 *Ib.,* 122 ; Sweet *a.* Chase, 2 *N. Y.,* 73.)

VI. Even the limitation contended for by the defendants, in the construction of the will, would be illegal, as too remote. Where an express trust is created, not authorized by law, no estate vests in the trustees ; but the trust, if directing or authorizing the performance of any act which may lawfully be performed under a power, will be valid as a power in trust. (Irving *a.* De Kay, 9 *Paige,* 521.) If this be regarded as an executory devise, then certainly the title was perfect in Dyson and his grantees, and there is no aspect in which the case can be viewed which shakes the title of the plaintiffs. Where the intention of the testator is illegal in part, or the trusts created are in part illegal and in part consistent with the rules of law, the court will give such construction as to uphold the legal provisions. (Lorillard *a.* Coster, 5 *Paige,* 172 ; 14 *Wend.,* 265; Haxtun *a.* Corse, 2 *Barb. Ch.,* 506 ; De Kay *a.* Irving, 5 *Den.,* 646 ; 9 *Paige,* 521 ; Parks *a.* Parks, *Ib.,* 107 ; Kane *a.* Gott, 24 *Wend.,* 641.)

VII. The power to sell must include the right to discharge the purchaser from looking after the application of the purchase money. Each successive purchaser of the lot in question could not be expected to inquire whether more of the real estate had been sold than was requisite to pay the indebtedness, or if the proceeds of that particular lot had been devoted to that purpose. (*Story's Eq. Jur.,* § 1131.)

By THE COURT.—STRONG, J.—The will in this case authorized the executors to sell the whole or any part of the estate, real and personal, of the testator, and to execute good and sufficient conveyances thereof; and directed the payment, out of the proceeds of the estate, of the testator's debts, funeral charges and expenses; and that the residue of the estate, unless the same or any part thereof should be disposed of by codicil, be distributed according to law, as in a case of intestacy.

The codicil, in the first clause, ratified and confirmed the will, except so far as any part of it might be revoked or altered by .

the codicil; and in addition to the powers granted to the executors in relation to the estate, authorized them to lease the estate, or any part of it, except such as should otherwise be disposed of, in their discretion, and as they should find the situation of the testator's affairs to require. Specific dispositions were then made of portions of the estate, after which, by the twelfth clause, "all the rest, residue, and remainder of the estate of every kind," was given to the executors in trust, that the remainder should be equally divided to and among the four children of the testator, share and share alike, and to their respective heirs. It was then expressed to be the testator's will, that the sum of $1,500 should be set apart by the executors for the support and education of a son and daughter until they arrived at twenty-one, and if that sum should not be sufficient, a further sum from their respective shares of the estate, as should be necessary; that the son should not come to the full possession and enjoyment of his portion until twenty-five; nor should he have the power to promise, pledge, mortgage, or dispose of any part of it before that time, but should be entitled to receive the income between twenty-one and twenty-five.

It was then directed that the three daughters at twenty-one should have the privilege of expending and appropriating, with the consent of the executors, one-third of their portions, that the remaining two-thirds should be held separate, free from the control and debts of their husbands; giving, however, on the death of the wives, the income of the reserved portions to the husbands during life, and after death to the children of the daughters; and if either of the daughters should die without lawful issue, or having issue which should not attain twenty-one, and without issue, then the share of said daughters after the death of her husband, or if no husband living at her death, should go to the testator's other children, share and share alike, such issue to take the portion that would have belonged to his, her, or their father or mother.

The point made by the appellants is, that the codicil was a revocation of the discretionary power of sale confirmed by the will, but I am satisfied the position cannot be maintained. The codicil contained nothing manifesting an intention to revoke or qualify the power of sale in the original will in reference to "all the rest, residue, and remainder of the estate" in the twelfth

clause of the codicil, which embraced the premises in question. That clause of the codicil purported simply to provide how and for whose benefit the residuary estate should be disposed of, in whatever form it might be when the division by the executors was to be made, whether real or personal, or part real and part personal.

Every part of it was entirely consistent with the power of sale to the executors, and might be fully executed whether or not the power of sale should be exercised.

It was at least necessary in order to nullify the power of sale as to the land contracted to be purchased by the defendant, that there should be an inconsistency between the exercise of the power and some part of the codicil; if it might stand, and the codicil have full operation, it remained in force.

The continuance of that power obviously was important in reference to the payment of debts and legacies, and carrying out the design of other parts of the codicil; and viewing the whole instrument, I think it clear, that was intended by the testator.

There being no other questions in the case, the judgment must be affirmed.